UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT P. HANDLER, not individually, but solely in his capacity as Trustee-Assignee for the Benefit of Creditors of ELORAC, INC.<br><br>　　　　　　　Plaintiff,<br>　v.<br><br>CHARTWELL RX SCIENCES, LLC, a New York limited liability company,<br><br>　　　　　　　Defendant. | Case No. 1:23-cv-3603<br><br>Hon. Steven C. Seeger<br><br>Hon. Jeffrey T. Gilbert |

**FIRST AMENDED COMPLAINT**

Plaintiff, Robert P. Handler ("Handler" or "Plaintiff"), not individually, but solely in his capacity as Trustee-Assignee for the Benefit of the Creditors of Elorac, Inc. ("Elorac" or "Licensor"), by his attorneys, Burke, Warren, MacKay & Serritella, P.C., makes this First Amended Complaint for damages and equitable relief against Defendant, Chartwell RX Sciences, LLC ("Chartwell" or "Licensee" and together with Handler, the "Parties").

**NATURE OF THE ACTION**

1. This suit stems from a pharmaceutical licensing agreement under which Elorac granted Chartwell an exclusive license to manufacture and commercialize a drug product with two approved Abbreviated New Drug Applications ("ANDAs") from the United States Food and Drug Administration ("FDA").

2. In exchange for the exclusive license, Chartwell agreed to compute and report its net sales for the drug and pay Elorac a royalty as a percentage of those net sales on a quarterly basis for a defined term.

3. Despite numerous notices from Elorac, Chartwell has refused to provide Elorac with any of the required quarterly sales reports and royalty payments, thereby breaching the licensing agreement.

## JURISDICTION, VENUE, AND PARTIES

4. Handler is an Illinois citizen domiciled in that state.

5. Elorac is a pharmaceutical company incorporated in Delaware and headquartered and authorized to conduct business in Illinois. Elorac's principal place of business is located at 205 W. Wacker Drive, Suite 918, Chicago, Illinois 60606.

6. On December 19, 2022, Elorac and Handler entered into a *Trust Agreement and Assignment for the Benefit of Creditors of Elorac, Inc.* (the "Assignment").

7. Pursuant to the Assignment, Handler is empowered to, among other things, collect and liquidate all property of Elorac.

8. Chartwell is a limited liability company organized and existing pursuant to the laws of the State of New York.

9. Chartwell's sole member is Jack Goldenberg ("Goldenberg").

10. Goldenberg is a citizen of the State of New York and resides at 1621 58th Street, Brooklyn, New York 11204.

11. This Court has diversity jurisdiction under 28 U.S.C. § 1332, as the parties are diverse and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Personal jurisdiction is proper in this Court. The claims against Chartwell arise out of a business relationship, transaction, and contract, each of which are substantially connected with this State. 735 ILCS § 5/2-209(a)(1), (7).

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events and omissions giving rise to Elorac's claim occurred in this district.

## GENERAL ALLEGATIONS

### I. The Contract

14. On or around September 27, 2017, Chartwell and Elorac entered into an *ANDA License Agreement* (the "2017 Agreement"), a copy of which is attached as **Exhibit 1.**

15. Under the 2017 Agreement, Elorac granted Chartwell an "exclusive, royalty-bearing license . . . to make, have made, use, import, offer for sale, and sell" both the brand name and generic forms of an FDA-approved drug, Griseofulvin (the "Drug"). **Exhibit 1**, §§ 2.1, 5.16, Ex. C.

16. In the 2017 Agreement, the "Launch Date" is defined as "on a Product-by-Product basis, the date on which the Licensee or its Affiliates makes its first commercial sale of such Products to an unrelated third party in an arms-length transation in the Territory." **Exhibit 1**, § 1.16.

17. In the 2017 Agreement, "Territory" is defined as "the United States of America, including its districts, territories, commonwealths and possessions." **Exhibit 1**, § 1.22.

18. In the 2017 Agreement, Chartwell agreed to pay Elorac a royalty as a percentage of Chartwell's Net Sales of the Drug, as follows:

> **Royalty Payment**: On a Product-by-Product strength basis, Chartwell shall pay to Elorac a royalty as a percentage of Net Sales (as defined below) from the Launch Date for each Product through to the end of Contract Year 6 (the "Royalty Term"), as follows:
>
> - Twenty percent (20%) for Contract Years 1 through 4; and
> - Fifteen percent (15%) for Contract Years 5 and 6 (ceasing after the end of Contract Year 6).

**Exhibit 1**, §§ 2.4, 5.16, Ex. C.

19146\00002\4855-3446-9993.v4

19. The "Net Sales" that factor into the royalty payments are defined in the 2017 Agreement as:

> <u>Net Sales</u> – shall mean, with respect to the Products sold in the Territory, the aggregate gross sales amount invoiced by Chartwell or its Affiliates on an arms-length basis to third parties in the Territory, less the following deductions (to the extent actually incurred or accrued):
>
> (i) cash discounts given by Chartwell (and its Affiliates);
>
> (ii) any adjustments on account of price adjustments, billing adjustments, shelf stock adjustments, promotional payments, or other similar allowances affecting the product;
>
> (iii) chargebacks, rebates, administrative fee arrangments, reimbursements, and similar payments to wholesalers and other distributors, buying groups, health care insurance carriers, pharmacy benefit management companies, health maintenance organizations, other institutions or health care organizations or other customers;
>
> (iv) amounts due to third parties on account of rebate payments, including Medicaid rebates, or other price reductions provided, based on sales by Chartwell and its Affiliates to any governmental or regulatory authority in respect of state or federal Medicare, Medicaid or similar programs; and
>
> (v) allowances and credits to third parties on account of rejected, damaged, returned or recalled product.

**Exhibit 1**, §§ 2.4, 5.16, Ex. C.

20. Chartwell further agreed to compute and report to Elorac the Net Sales for each calendar quarter of the Royalty Term and make each corresponding royalty payment due to Elorac:

> Within thirty (30) days following the end of each Calendar Quarter during the Royalty Term, compute and report to Elorac in a mutually acceptable format and detail the Net Sales and to pay the Royalty for that Calendar Quarter as reflected in the report.

*Id.*

21. On September 13, 2021, Chartwell and Elorac entered into an *Amendment to ANDA License Agreement* (individually, the "Amendment", and collectively, with the 2017 Agreement, the "Agreement"), a copy of which is attached as **Exhibit 2.**

22. In the Amendment, the definition of "Royalty Term" is amended to mean "from the Launch Date for each applicable Product through August 28, 2024." **Exhibit 2**, § 4.

23. The Amendment modified Sections 2.4 and 2.5 of the 2017 Agreement such that the royalty was set at fifteen percent (15%) of Net Sales. **Exhibit 2**, § 3.

24. Under the Agreement, Chartwell was required to provide Elorac with net sales and royalty computations and payments within thirty (30) days of the end of each calendar quarter.

## II.  Chartwell's Refusal to Perform

25. On information and belief, Chartwell began selling the Drug sometime in 2021, and has continued selling the Drug at all relevant times through the filing of this Complaint.

26. Notwithstanding Elorac's repeated requests, Chartwell has not provided Elorac with any quarterly net sales computations since it began selling the Drug.

27. Notwithstanding Elorac's repeated requests, Chartwell has not provided Elorac with any quarterly royalty computations since it began selling the Drug.

28. Chartwell has not made any quarterly royalty payments to Elorac relating to its sale of the Drug.

29. Chartwell would not have been able to generate any sales of the Drug but for its license from Elorac.

30. On information and belief, Chartwell has recorded cumulative Net Sales (as that term is defined in the Agreement) of not less than $2,000,000 since the launch date.

19146\00002\4855-3446-9993.v4

31. On information and belief, royalty payments by Chartwell to Elorac since the launch date should have totaled not less than $300,000.

32. On March 24, 2023, Handler sent a letter to Chartwell regarding its failure to perform under the Agreement, sending a notice and demand for payment. A copy of the March 24, 2023 letter is attached as **Exhibit 3**.

33. Chartwell did not to respond to Handler's March 24, 2023 letter.

34. As a result of Chartwell's failure to perform under the Agreement, Handler has incurred damages in an amount to be proven at trial, but not less than $300,000.

## COUNT I: BREACH OF CONTRACT

35. Handler incorporates and realleges Paragraphs 1 through 32 of its Complaint as though fully set forth herein.

36. The Agreement is a valid and enforceable contract.

37. Elorac has performed all of its obligations under the Agreement.

38. Chartwell is in breach of the Agreement by virtue of Chartwell's failure to provide Elorac with net sales and royalty computations as required by the Agreement.

39. Chartwell is in breach of the Agreement by virtue of Chartwell's failure to pay royalties due to Elorac due under the Agreement.

40. Chartwell's breaches of the Agreement proximately caused damages to Elorac in an amount exceeding $300,000, plus additional damages and expenses incurred on a daily basis.

WHEREFORE, Handler requests that the Court:

A. Enter judgment in Handler's favor and against Chartwell on Count I of this Complaint;

B. Award Handler damages in an amount to be proven at trial, but in any event not less than $300,000, to fully compensate Elorac for all losses resulting from Chartwell's wrongful acts to date;

C. Require Chartwell to fulfill its ongoing Net Sales reporting and royalty payment obligations through the remainder of the Agreement's Royalty Term; and

D. Award Handler such other and further relief as the Court deems just and proper.

## COUNT II: UNJUST ENRICHMENT
*Pled in the alternative to Count I*

41. Handler incorporates and realleges Paragraphs 1 through 32 of its Complaint as though fully set forth herein.

42. This Count II is pled in the alternative to Count I, to the extent this Court determines that no valid contract existed between Elorac and Chartwell.

43. As of September 26, 2017, Elorac held the exclusive rights to the Drug, including the rights to market, manufacture, and commercialize it.

44. As of September 26, 2017, Chartwell held no rights to the Drug whatsoever.

45. Chartwell therefore had no right to manufacture or commercialize the Drug.

46. Chartwell nevertheless manufactured, commercialized and/or sold the Drug from some time after September 26, 2017 through the filing of this Complaint.

47. From September 27, 2017 through the present, Chartwell has generated millions of dollars in sales of the Drug to which it had no rights, thereby unjustly retaining a benefit from Elorac, to Elorac's detriment.

48. Chartwell's retention of millions of dollars of sales for the Drug to which it had no rights violates the fundamental principles of justice, equity, and good conscience.

WHEREFORE, Handler requests that the Court:

7

  A.  Enter judgment in his favor and against Charwell on Count II of this Complaint;

  B.  Award Handler his actual damages for unjust enrichment due to Chartwell's unlawful conduct in an amount to be determined at trial; and

  C.  Award Handler such other and further relief as the Court deems just and proper.

## COUNT III: PROMISSORY ESTOPPEL
*Pled in the alternative to Count I*

49.  Handler incorporates and realleges Paragraphs 1 through 32 of its Complaint as though fully set forth herein.

50.  This Count III is pled in the alternative to Count I , to the extent this Court determines that no valid contract existed between Elorac and Chartwell.

51.  As of September 26, 2017, Elorac held the exclusive rights to the Drug, including the rights to market, manufacture, and commercialize it.

52.  In exchange for an exclusive license to manufacture and commercialize the Drug for six years, Chartwell unambiguously promised to pay Elorac a royalty as a percentage of Chartwell's net sales of the Drug.

53.  In exchange for the exclusive license, Chartwell also unambiguously promised to compute and report its net sales of the Drug to Elorac within thirty (30) days of each calendar quarter-end to verify the royalty payment due.

54.  Elorac reasonably and justifiably relied on Chartwell's promises and refrained from manufacturing or commercializing the Drug beginning on September 27, 2017.

55.  Elorac thereby forewent millions of dollars in sales of the Drug to its detriment.

56.  Chartwell expected and foresaw Elorac's reliance on Chartwell's promise in exchange for the exclusive license because it necessarily required Elorac to refrain from manufacturing or commercializing the Drug, which it did.

19146\00002\4855-3446-9993.v4

57. Chatwell's promises must be enforced to avoid injustice and inequity.

WHEREFORE, Handler requests that the Court:

A. Enter judgment in his favor and against Chartwell on Count III of this Complaint;

B. Award Handler his actual damages for promissory estoppel due to Chartwell's unlawful conduct in an amount to be determined at trial; and

C. Award Handler such other and further relief as the Court deems just and proper.

Date: June 29, 2023

Respectfully submitted,

ROBERT P. HANDLER, not individually, but solely in his capacity as Assignee for the Benefit of the Creditors of ELORAC, INC., *Plaintiff*

By: /s/ *David K. Welch*
One of His Attorneys

David K. Welch (dwelch@burkelaw.com)
Brian P. Welch (bwelch@burkelaw.com)
Chase E. Bullock (cbullock@burkelaw.com)
BURKE, WARREN, MACKAY & SERRITELLA, P.C.
330 North Wabash Avenue, 21st Floor
Chicago, Illinois 60611
Tel.: (312) 840-7000
Fax: (312) 840-7900

9

19146\00002\4855-3446-9993.v4

## **CERTIFICATE OF SERVICE**

      Pursuant to Fed. R. Civ. P. 5(a), (b)(2)(C), and LR 5.5, I hereby certify that on June 29, 2023, a true and correct copy of the foregoing First Amended Complaint was served via First Class U.S. Mail addressed to:

Chartwell RX Sciences, LLC
Attn: Jack Goldenberg
77 Brenner Drive
Congers, New York 10920

I further certify that a true and correct copy of the foregoing First Amended Complaint was attached to the Summons issued by the Clerk to be served pursuant to Fed. R. Civ. P. 4. In addition to service via First Class U.S. Mail described above, copies of the foregoing First Amended Complaint and Summons will be tendered to a process server for service under Fed. R. Civ. P. 4, and an additional Affidavit of Service will be filed with the Court once service is effectuated.

                                                                                    /s/     *David K. Welch*
                                                                                    David K. Welch
                                                                                    One of Plaintiff's Attorneys

19146\00002\4855-3446-9993.v4